660 A.2d 1173

SOUTHERN NEW JERSEY NEWSPAPERS, INC., PLAINTIFF–APPELLANT, v. THE TOWNSHIP OF MT. LAUREL, THE POLICE DEPARTMENT OF THE TOWNSHIP OF MT. LAUREL, AND THE CUSTODIAN OF RECORDS FOR THE POLICE DEPARTMENT OF THE TOWNSHIP OF MT. LAUREL, DEFENDANTS–RESPONDENTS, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR–RESPONDENT AND CROSS–APPELLANT.

Argued March 27, 1995—Decided July 19, 1995.

*John C. Connell* argued the cause for appellant (*Archer & Greiner*, attorneys; *George F. Kugler*, of counsel).

*Michael L. Mouber* argued the cause for respondents.

*Mark J. Fleming*, Assistant Attorney General, argued the cause for respondent and cross-appellant (*Deborah T. Poritz*, Attorney General of New Jersey, attorney; *Alexander P. Waugh, Jr.*, Executive Assistant Attorney General, of counsel; *Carol Johnston*, Deputy Attorney General, on the brief).

*Jean Hartman Culp*, Assistant County Solicitor, argued the cause for *amicus curiae*, Burlington County Adjustor (*Stephen J. Mushinski*, Burlington County Adjustor, attorney).

The opinion of the Court was delivered by

STEIN, Justice.

The issue in this appeal is whether the press may obtain access to firearm permits and the documentation supporting the applications for those permits. The *Courier–Post* sought access to all documents maintained by the Township of Mount Laurel Police Department relating to applications to purchase firearms. The trial court denied access to those records. The Appellate Division affirmed, but granted the newspaper an opportunity to make limited inquiries concerning whether the department had complied with the statute authorizing issuance of firearm permits. We granted certification. 139 *N.J.* 289, 654 *A.*2d 470 (1994).

I

The essential facts are undisputed. In October 1989, Judith Thomas, a reporter for the *Courier–Post*, a daily newspaper owned and published by plaintiff, Southern New Jersey Newspapers, Inc., requested access to records of permits for the sale and purchase of firearms issued by law-enforcement officials of defendant Township of Mount Laurel (Mount Laurel). Thomas sought access to those records to obtain information relevant to her investigation of Saunder Weinstein, the Director of Public Safety and Acting Chief of Police of defendant Mount Laurel Police Department (Police Department), asserting a general interest in determining whether Weinstein had issued firearm permits without legal authority. Police Department officials refused to grant access without a formal demand letter from plaintiff's counsel.

Through counsel, plaintiff issued a written request to Weinstein dated November 2, 1989, demanding the release of records of firearm permits issued from January to October 1989. Because Weinstein did not answer that demand letter, plaintiff's counsel propounded another written request to Weinstein dated December 7, 1989, directing him to respond by December 12, 1989, or plaintiff's demand would be deemed denied. Weinstein did not respond to that request by December 12, 1989.

In January 1990, plaintiff filed a complaint in lieu of prerogative writs, seeking access to the firearm-permit records maintained by the Police Department pursuant to the firearms-licensing statute, *N.J.S.A.* 2C:58–1 to –16, and asserting three grounds for entitlement to those records: the Examination and Copies of Public Records statute (Right–to–Know Law), *N.J.S.A.* 47:1A–1 to –4, the common-law right of access, and a constitutional right of access under the First Amendment of the United States Constitution and under Article I, Paragraph 6 of the New Jersey Constitution. Subsequently, plaintiff expanded its request to encompass all documents maintained by the Police Department relating to applications to purchase firearms, including reference letters, background-investigation reports, and forms containing the applicant's

consent to search his or her mental-health records (if any) and the result of that search. The demand, however, did not extend to files on applications to carry a handgun.

Following discovery, plaintiff moved, and defendants, Mount Laurel, the Police Department, and the Custodian of Records for the Police Department, cross-moved for summary judgment. The Burlington County Solicitor, appearing as *amicus curiae* on leave granted on behalf of the Burlington County Adjustor, and the Burlington County Prosecutor, appearing as intervenor of right on motion granted, opposed plaintiff's motion. After an initial hearing on November 8, 1991, the trial court ordered supplemental briefing and argument on the jurisdictional and substantive effect of a proposed State Police regulation, 23 *N.J.R.* 2258 (Aug. 5, 1991). That regulation, *N.J.A.C.* 13:54–1.15, which had become effective on November 18, 1991, 23 *N.J.R.* 3525, barred disclosure of "[a]ny background investigation conducted by the chief of police, the Superintendent or county prosecutor of any applicant for a license, permit, firearms identification card or registration * * * except upon order of a court of competent jurisdiction."

In March 1992, the trial court granted defendants' cross-motion for summary judgment and denied plaintiff's motion for summary judgment. In its ruling, the court listed the documents that constituted a completed investigative file: (1) a completed and signed application for either a firearms-purchaser identification card or a handgun-purchase permit; (2) the Consent for Mental Health Records Search form, which the applicant signs and the county adjuster completes after searching its mental-health records; (3) two answered reference letters; (4) a set of fingerprints and any report issued by the State Police or the Federal Bureau of Investigation regarding any comparison with fingerprints on file; (5) a Criminal History Report (rap sheet); and (6) a Firearms Applicant Investigation Report, which contains a summary of the above five documents. In addition, the court noted that if an applicant intends to purchase a handgun, the file will eventually include a Permit to Purchase a Handgun and Form of Register,

which the applicant delivers in quadruplicate to the handgun seller, who, after selling the applicant a handgun, completes the permit and delivers the original to the Superintendent of the State Police, and copies to the chief of police of the municipality in which the applicant resides and to the applicant, the seller retaining a copy. *See N.J.S.A.* 2C:58–3h. (The file, however, does not contain either the original or a copy of the Firearms Purchaser Identification Card, which the applicant retains.)

The court found that the investigative-file documents constituted public records that were required "to be made, maintained or kept on file" within the meaning of the Right–to–Know Law, *N.J.S.A.* 47:1A–2, because it viewed the firearms-licensing statute, *N.J.S.A.* 2C:58–1 to –16, as "creating a detailed regulatory scheme precedent to the retail sale of handguns and other firearms * * * based upon a prescribed and written application form and centered around a mandated investigation [that] commences with information required by statute to be offered by the applicant in writing." The court reasoned "that the entire process is required by law and therefor[e] the paperwork generated by the process reasonabl[y] necessary to its implementation lies within the intent of the legislative definition of a public record."

Nevertheless, the court observed that *N.J.S.A.* 47:1A–2 permits Right–to–Know–Law records to be exempted by "statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order." The court thus determined that the Division of State Police's adoption of *N.J.A.C.* 13:54–1.15, which prohibits disclosure of "background investigation" materials, exempted the following documents: the "answered application forms, answered Mental Health Search form, answered reference letters, fingerprints and any report of comparisons, the Criminal History Report and the internal Firearms Applicant Investigation Report." Although noting that neither the firearms statute, *N.J.S.A.* 2C:39–1 to –15, nor the firearms-licensing statute ex-

pressly granted rule-making authority to the Superintendent or to the Division of State Police, the court "conclude[d] [that] the regulation [was] within the reasonably implied scope of regulatory powers of the Division of State Police."

However, in respect of issued firearms-purchaser identification cards and handgun-purchase permits, the court determined that those records did not fall within the *N.J.A.C.* 13:54–1.15 exemption because "[t]hey [were] not part of the investigation itself but its end product." (As previously noted, the investigative file does not contain issued firearms-purchaser identification cards, which are retained by the applicant.) Nevertheless, the court stated that it "would [have] order[ed] inspection of" the handgun-purchase permits "but for [its] analysis of the common law."

Turning to plaintiff's common-law claim, the trial court found that the investigative-file documents were common-law public records because they were records made by a public official in the exercise of public functions. However, the court noted that plaintiff had "not demonstrated a sufficiently particularized or compelling need for the background file—*including the [handgun-purchase] [p]ermit*—[that] outweigh[ed] the State's interest in confidentiality in the highly sensitive personal material likely to be contained in the typical file or in the fact that a [p]ermit has been approved." Characterizing plaintiff's interest in disclosure as "a generalized interest in whether the gun control laws [had been] properly administered in Mount Laurel," the court concluded that plaintiff's interest was outweighed by the State's interest in obtaining candid responses from the applicants and their character references, in preventing an increase in black-market sales of unregistered firearms, and in not deterring qualified persons from applying for a permit or identification card.

Finally, addressing plaintiff's constitutional claim, the court applied the two-pronged test articulated by the United States Supreme Court in *Press–Enterprise Co. v. Superior Court of California,* 478 *U.S.* 1, 8, 106 *S.Ct.* 2735, 2740, 92 *L.Ed.*2d 1, 10 (1986): (1) "whether the place and process have historically been

open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." The court rejected plaintiff's constitutional claim because plaintiff had failed to prove the existence of a tradition of public access to issued handgun-purchase permits or to the background-investigation file, and had failed to demonstrate "that public access would have a positive role in the functioning of the * * * careful regulatory grid presently in place governing the sale and purchase of handguns."

While plaintiff's appeal was pending, the Appellate Division granted the Attorney General's motion to appear as *amicus curiae*. Also during the pendency of plaintiff's appeal, the Division of State Police, Department of Law and Public Safety, proposed revisions to *N.J.A.C.* 13:54–1.15 extending the regulation's prohibition against disclosure beyond "background investigation" materials to all documents sought by plaintiff, *see* 24 *N.J.R.* 3022 (Sept. 8, 1992), which the Superintendent of the State Police adopted "without change." *See* 24 *N.J.R.* 4068 (Nov. 2, 1992).

After the Appellate Division had remanded this case to the Law Division for reconsideration in light of *N.J.A.C.* 13:54–1.15 as amended, the trial court issued a supplemental opinion, finding that the amendment to *N.J.A.C.* 13:54–1.15 strengthened the conclusions in its earlier opinion because "the new regulation * * * [protectively] cloaked the entire [application] process."

The Appellate Division affirmed, rejecting the trial court's reasoning and substituting its own rationale for denying access. 275 *N.J.Super.* 465, 646 *A.*2d 510 (1994). In respect of plaintiff's Right–to–Know–Law claim, the Appellate Division found, as a preliminary matter, that only the following documents were required by law to be made, maintained or kept: (1) applications for firearms-purchaser identification cards or handgun-purchase permits; (2) firearms-purchaser identification cards; (3) handgun-purchase permits; and (4) consent forms for mental-health records. *Id.* at 478–79, 646 *A.*2d 510. In contrast, it found that the

background-investigation reports and the reference letters were not Right–to–Know–Law documents. *Id.* at 479, 646 *A.*2d 510.

Turning to the validity of *N.J.A.C.* 13:54–1.15, the court rejected the trial court's ruling that that regulation exempted the requested documents from the category of Right–to–Know–Law records, explaining· that because the Superintendent was not the head of a principal department of State government, he had lacked the authority to promulgate an administrative regulation denying access to public records. 275 *N.J.Super.* at 483, 646 *A.*2d 510; *see* Executive Order No. 9 (Sept. 30, 1963) (delegating to head of each principal department of Executive Branch authority to adopt regulations exempting records from disclosure under Right–to–Know Law). Nevertheless, the Appellate Division agreed with the trial court's conclusion that

> a weighing of [the] public interest properly lead[ ] to rejection of plaintiff's unduly broad and undifferentiated requests * * *, both [regarding] the records [that] [the Appellate Division] * * * held were improperly characterized as Right to Know records [the background-investigation reports and reference letters], and [regarding] material [that] the Superintendent endeavored to remove from Right to Know status by adoption of the regulation.
>
> [275 *N.J.Super.* at 483–84, 646 *A.*2d 510.]

Insofar as access under the common-law balancing test was concerned, the Appellate Division found that the investigative-file documents were common-law public records, *id.* at 479, 646 *A.*2d 510, and adopted the trial court's analysis, adding that the "public interest evaluation has been confirmed by the two other branches of government. The Superintendent promulgated the confidentiality regulation, resting it on notions of privacy and public safety. The Legislature approved the regulation, thus endorsing its policy * * *." *Id.* at 484, 646 *A.*2d 510. However, it stated that "[r]ecognition of the strong * * * public policy interest * * * does not alone resolve this case [regarding] the documents [that] continue to retain Right to Know status." *Id.* at 484–85, 646 *A.*2d 510. The court also referred to *N.J.S.A.* 2A:84A–27, which prohibits disclosure of official State or federal information if a court finds that disclosure will be harmful to public interests. Denying access to the Right–to–Know–Law documents, it held that "the

public interests enunciated by the Superintendent in promulgating *N.J.A.C.* 13:54–1.15, deemed approved by the Legislature, and embodied in the trial [court]'s findings, fall within the contemplation of *N.J.S.A.* 2A:84A–27(b), at least [regarding] disclosures as broad and undifferentiated as those sought by plaintiff." 275 *N.J.Super.* at 485, 646 *A.*2d 510.

The court added that any conflict between *N.J.S.A.* 2A:84A–27 and the Right–to–Know Law can be avoided by permitting "properly limited inquiries":

Nothing we have said precludes the press from asking the Superintendent or a local police chief whether any handgun purchase permits or firearms purchase identification cards have actually been issued to persons with records of institutional confinement, mental or correctional, or to persons who have responded affirmatively to the questions respecting drug and alcohol dependency, past convictions, or membership in organizations [that] seek to overthrow the government or deny the individual constitutional rights of others.

[275 *N.J.Super.* at 485–86, 646 *A.*2d 510.]

"An affirmative response to such inquiries may then be pursued in a more limited fashion, * * * and more easily amenable to devices such as redaction, protective orders, and *in camera* reviews, which can be judicially tailored to the needs of the individual case, while mindful of public interest considerations." *Id.* at 486, 646 *A.*2d 510. Thus, because plaintiff had "not availed itself of the opportunity to make such limited inquiries," the court granted plaintiff leave to amend the pleadings "to make requests [that] are consistent with this opinion." *Ibid.*

In respect of mental-health records, the court stated that those records warranted independent treatment, and therefore analyzed those records separately, determining that *N.J.S.A.* 30:4–24.3 prohibits "broad access" to those records. That statute requires confidential treatment of "[a]ll certificates, applications, records, and reports made pursuant to the provisions of * * * Title [30] and directly or indirectly identifying any individual presently or formerly receiving services in a noncorrectional institution." However, that statute permits disclosure of mental-health records that are "necessary for the conduct of proceedings before it [when] th[e] failure to * * * disclos[e] would be contrary to the

public interest." *N.J.S.A.* 30:4–24.3(3). The court nonetheless reasoned that "[g]iven the strong legislative policy of *N.J.S.A.* 30:4–24.3, the policy considerations listed by the Superintendent during the rule-making process, and the [trial court]'s common law balancing analysis, the public interest prong clearly has not been satisfied," 275 *N.J.Super.* at 480–81, 646 *A.*2d 510, and that "the Title 30 statutory prohibition, and the public interest considerations * * * preclude[d] affording broad access to the requested mental health records under [the] common law." *Id.* at 481, 646 *A.*2d 510.

Lastly, the Appellate Division considered and rejected plaintiff's constitutional-right-of-access claim, noting that federal courts generally have refused to recognize such a right "outside the arena of criminal trials." *Id.* at 486, 646 *A.*2d 510. Furthermore, the court reasoned that

[g]iven reliance by applicants and the persons solicited by investigators for background information upon the State's longstanding policy of privacy, reliance upon the published regulation, and reasonable reliance upon the previous privacy determinations of our courts, we are further satisfied that there is no basis for recognizing a paramount constitutional right for press access in this matter.
[*Id.* at 487, 646 *A.*2d 510.]

Plaintiff petitioned for certification on the issue whether it had a right of access to the investigative-file documents pursuant to the Right–to–Know Law, the common law, and the State and Federal Constitutions. The Attorney General cross-petitioned, contending that the Appellate Division erred in holding that under the Right–to–Know Law a local police chief or the Superintendent is required to respond to specific inquiries, which will result in the responsible official's searching through records to create summaries or statistical analyses of government documents.

■ In April 1995, the Attorney General readopted *N.J.A.C.* 13:54–1.15, effective May 1, 1995. 27 *N.J.R.* 1807 (May 1, 1995). That regulation exempts from public disclosure "[a]ny background investigation conducted" as well as

[a]ny application for a permit, firearms identification card, or license, and any document reflecting the issuance or denial of such permit, firearms identification

card, or license, and any permit, firearms identification card, license, certification, certificate, form of register, or registration statement [ ] maintained by any State . or municipal·governmental agency.

Pursuant to Executive Order No. 9 (Sept. 30, 1963), the Attorney General is one of the State-government officials specifically authorized to adopt regulations exempting records from disclosure under the Right–to–Know Law. As a consequence ·of the Attorney General's readoption of *N.J.A.C.* 13:54–1.15, the investigative-file documents clearly are exempted from public disclosure under the Right–to–Know Law, which renders moot plaintiff's claim of access to the documents pursuant to the Right–to–Know Law. *See In re Application of Madin/Lord Land Dev. Int'l,* 103 *N.J.* 689, 695, 512 *A.*2d 490 (1986) (holding that Pinelands Commission's new rules rendered moot the issue whether local-planning agency of uncertified municipality had right to seek Commission's reconsideration in development-application review process); *In re "Plan For Orderly Withdrawal From New Jersey" of Twin City Fire Ins. Co.,* 248 *N.J.Super.* 616, 641, 591 *A.*2d 1005 (App.Div.1991) ("Whatever concerns we may have had [about] whether the Commissioner should have proceeded under duly adopted regulations rather than through an individual adjudicatory process have been rendered moot by the Commissioner's adoption of comprehensive regulations * * *."), *aff'd,* 129 *N.J.* 389, 609 *A.*2d 1248 (1992), *cert. denied,* —— U.S. ——, 113 *S.Ct.* 1066, 122 *L.Ed.*2d 370 (1993); *In re N.J.A.C. 14A:20–1.1 et seq.,* 216 *N.J.Super.* 297, 304, 523 *A.*2d 686 (App.Div.1987) ("[The Department of Energy] was prohibited from implementing and enforcing the regulations, not from readopting them to moot the challenge to their validity on appeal.").

■ Because of that conclusion, we do not reach the issue whether the Right–to–Know Law requires the responsible official to provide summaries or statistical analyses of government documents. Similarly, because we remand this case to the trial court to conduct the common-law balancing test, we do not address whether the common law mandates the responsible official to produce such summaries. However, we note that the Appellate Division's assumption that the responsible official is required to

provide summaries is inconsistent with our understanding that neither the Right–to–Know Law nor the common law generally has been interpreted to impose an affirmative obligation on custodians of records to provide summaries of either Right–to–Know–Law or common-law documents. *See N.J.S.A.* 47:1A–2 ("Every citizen of this State * * * shall have the right to inspect [public] records * * *, to copy such records by hand, and * * * to purchase copies of such records."); *Asbury Park Press, Inc. v. State, Dep't of Health,* 233 *N.J.Super.* 375, 381, 558 *A.*2d 1363 (App.Div.) (holding that summary analysis in form of spread sheet was not Right–to–Know–Law document), *certif. denied,* 117 *N.J.* 646, 569 *A.*2d 1344 (1989). Accordingly, the general rule is that public agencies are not required to produce new information even if the documents available under the Right–to–Know Law and the common law are unresponsive to a citizen's inquiry. Nevertheless, we note that rigid adherence to that general rule might not necessarily be appropriate in all cases, and observe that the Appellate Division has ruled to that effect in *Board of Education v. New Jersey Department of the Treasury,* 279 *N.J.Super.* 489, 500, 502, 653 *A.*2d 589 (App.Div.) (holding that claims-information data for specific municipality or State agency constituted public records under Right–to–Know Law and common law even though such data was not grouped by municipality or agency but rather was compiled into two groups—State and local), *leave to appeal granted,* 142 *N.J.* 440, 663 *A.*2d 1353 (1995).

## II

### A

The requirements and procedures for issuance of firearm licenses and handgun permits are set forth in *N.J.S.A.* 2C:58–1 to –16 and *N.J.A.C.* 13:54–1.1 to –1.15. Under the statute, a person must obtain a permit to purchase a handgun or an identification card to purchase other types of firearms. *N.J.S.A.* 2C:58–3a and b. The chief of police of a full-time police department in which the applicant resides or the Superintendent of the State Police has the authority to issue handgun-purchase permits or firearms-purchas-

er identification cards to a "person of good character and good repute in the community in which he lives" unless one of the statutory disqualifying conditions is present: (1) a criminal conviction; (2) the applicant is drug dependent or a habitual drunkard, or is confined for a mental disorder; (3) the applicant suffers from a physical defect or disease that renders him or her unsafe to handle firearms, has been confined for a mental disorder, or is an alcoholic, "unless any of the foregoing persons produces * * * satisfactory proof [ ] that he is no longer suffering from that particular disability in such a manner that would interfere with or handicap him in the handling of firearms"; (4) the applicant is under the age of eighteen; or (5) "the issuance would not be in the interest of the public health, safety or welfare." *N.J.S.A.* 2C:58–3c; *see N.J.A.C.* 13:54–1.5 to –1.6.

The application prescribed by the Superintendent requires that the applicant provide his or her name, home and business address, date of birth, occupation, gender, and physical description. *N.J.S.A.* 2C:58–3e; *see N.J.A.C.* 13:54–1.4(a). The application further requires the applicant to state whether he or she is subject to any of the enumerated disqualifying conditions, or whether he or she has been a member of an organization that advocates or approves of the forceful overthrow of the United States Government. *N.J.S.A.* 2C:58–3e; *see N.J.A.C.* 13:54–1.4(a). The application also instructs the applicant to provide two references. *N.J.S.A.* 2C:58–3e; *N.J.A.C.* 13:54–1.4(c). For the purpose of complying with *N.J.S.A.* 2C:58–3e, the applicant "waive[s] any statutory or other right of confidentiality relating to institutional confinement." *N.J.S.A.* 2C:58–3e; *N.J.A.C.* 13:54–1.4(b). In addition, the applicant must allow the chief of police or the Superintendent to obtain his or her fingerprints for comparison to municipal, county, State, and federal records. *N.J.S.A.* 2C:58–3e; *N.J.A.C.* 13:54–1.4(f).

B

New Jersey courts have long recognized a limited common-law right to inspect governmental records, *South Jersey*

*Publishing Co. v. New Jersey Expressway Auth.,* 124 *N.J.* 478, 487, 591 *A.*2d 921 (1991), which has not been abrogated or curtailed by the Right–to–Know Law. *Irval Realty Inc. v. Board of Pub. Util. Comm'rs,* 61 *N.J.* 366, 375, 294 *A.*2d 425 (1972). Under the common law, as a threshold condition for access to public records, a citizen must establish an interest in the subject matter of the material that he or she is seeking. *South Jersey Publishing, supra,* 124 *N.J.* at 487, 591 *A.*2d 921; *Irval Realty, supra,* 61 *N.J.* at 372, 294 *A.*2d 425. The interest does not have to be purely personal, but rather may be "one citizen or taxpayer out of many, concerned with a public problem or issue." *Irval Realty, supra,* 61 *N.J.* at 372, 294 *A.*2d 425. For example, a newspaper's interest in " 'keep[ing] a watchful eye on the workings of public agencies' " is sufficient to accord standing under the common law. *Red Bank Register, Inc. v. Board of Educ.,* 206 *N.J.Super.* 1, 9, 501 *A.*2d 985 (App.Div.1985) (quoting *Nixon v. Warner Communications, Inc.,* 435 *U.S.* 589, 598, 98 *S.Ct.* 1306, 1312, 55 *L.Ed.*2d 570, 579 (1978)).

■ After determining that a plaintiff has standing to assert a right to inspect and examine government documents, a court must determine if the records sought are "public records." *South Jersey Publishing, supra,* 124 *N.J.* at 487, 591 *A.*2d 921. The common-law definition of public record is broader than the Right–to–Know–Law definition. *Id.* at 489, 591 *A.*2d 921; *McClain v. College Hosp. & New Jersey College of Medicine & Dentistry,* 99 *N.J.* 346, 354, 492 *A.*2d 991 (1985). Under the common law, a "public record" is

" 'one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are * * * that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it * * *.' "

[*Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978) (quoting *Josefowicz v. Porter,* 32 *N.J.Super.* 585, 591, 108 *A.*2d 865 (App.Div.1954) (quoting 76 *C.J.S. Records* § 1)).]

Simply stated, a common-law public record is a record " 'made by public officers in the exercise of public functions.' " *North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders,* 127 *N.J.* 9, 13, 601 *A.2d* 693 (1992) (quoting *Nero, supra,* 76 *N.J.* at 222, 386 *A.2d* 846).

However, the common-law right of access is not absolute. *Atlantic City Convention Ctr. Auth. v. South Jersey Publishing Co.,* 135 *N.J.* 53, 60, 637 *A.2d* 1261 (1994); *South Jersey Publishing, supra,* 124 *N.J.* at 488, 591 *A.2d* 921. Rather, after determining that a plaintiff has standing and the documents sought are public records, "a court must balance the plaintiff's interest in the information against the public interest in confidentiality of the documents, including a consideration of whether the 'demand for inspection is "premised upon a purpose [that] tends to advance or further a wholesome public interest or a legitimate private interest." ' " *South Jersey Publishing, supra,* 124 *N.J.* at 488, 591 *A.2d* 921 (quoting *Loigman v. Kimmelman,* 102 *N.J.* 98, 112, 505 *A.2d* 958 (1986) (quoting *City of St. Matthews v. Voice of St. Matthews, Inc.,* 519 *S.W.2d* 811, 815 (Ky.1974))); *see Atlantic City Convention Ctr. Auth., supra,* 135 *N.J.* at 60, 637 *A.2d* 1261. Where "reasons for maintaining a high degree of confidentiality in the public records are present, even when the citizen asserts a public interest in the information, more than [the] citizen's status and good faith are necessary to call for production of the documents." *Loigman, supra,* 102 *N.J.* at 105–06, 505 *A.2d* 958; *see also Atlantic City Convention Ctr. Auth., supra,* 135 *N.J.* at 60, 637 *A.2d* 1261 (explaining that balancing process is " 'flexible and adaptable to different circumstances and sensitive to the fact that the requirements of confidentiality are greater in some situations than in others' " (quoting *McClain, supra,* 99 *N.J.* at 362, 492 *A.2d* 991)).

Conversely, we have stated that

"[a]s the considerations justifying confidentiality become less relevant, a party asserting a need for the materials will have a lesser burden in showing justification. If the reasons for maintaining confidentiality do not apply at all in a given situation,

or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need."

[*Techniscan Corp. v. Passaic Valley Water Comm'n*, 113 *N.J.* 233, 236, 549 *A.*2d 1249 (1988) (quoting *McClain, supra*, 99 *N.J.* at 362, 492 *A.*2d 991).]

In *Loigman*, we suggested several factors that a court may consider in performing its balancing function:

(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[102 *N.J.* at 113, 505 *A.*2d 958.]

"As we noted, the court should balance '[a]gainst these and any other relevant factors * * * the importance of the information sought to the plaintiff's vindication of the public interest.'" *South Jersey Publishing, supra*, 124 *N.J.* at 488, 591 *A.*2d 921 (quoting *Loigman, supra*, 102 *N.J.* at 113, 505 *A.*2d 958).

In its balancing, a court might find it necessary to compel production of the sought-after records and conduct an *in camera* review thereof. *Ibid.; see Loigman, supra*, 102 *N.J.* at 106, 505 *A.*2d 958 (stating that "implicit in the concept [of an *in camera* review] is a judicial weighing of that showing of standing against the need for confidentiality before proceeding to an automatic *in camera* review of the materials"). Indeed, the court might decide that releasing the records in a redacted form while editing out any privileged or confidential subject matter is appropriate. *South Jersey Publishing, supra*, 124 *N.J.* at 488–89, 591 *A.*2d 921. However, a "mere summary of the record is inadequate * * * where a more complete record reflecting the underlying facts is available and the plaintiff's need therefore outweighs any threat disclosure may pose to the public or private interest." *Id.* at 489, 591 *A.*2d 921.

### III

■ We first observe that plaintiff has a sufficient interest under the common law to request access to public records. See *South Jersey Publishing, supra,* 124 *N.J.* at 496, 591 *A.*2d 921 (holding that newspaper "had a sufficient interest under the common law to request access" to minutes and related documents of governmental meeting held in executive session); *Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 583, 610 *A.*2d 903 (App. Div.) (holding that newspaper had "sufficient interest to obtain access" to police investigative files and autopsy report regarding suspect who had been shot to death while in police custody), *certif. denied,* 133 *N.J.* 429, 627 *A.*2d 1135 (1992); *Red Bank Register, supra,* 206 *N.J.Super.* at 9, 501 *A.*2d 985 (holding that newspaper had sufficient interest to obtain curriculum-mapping reports from municipal board of education).

As this Court recognized in *South Jersey Publishing, supra,* 124 *N.J.* at 497, 591 *A.*2d 921, the "press frequently has asserted rights of access to public records, in the public interest, under the common law." *See, e.g., North Jersey Newspapers, supra,* 127 *N.J.* at 11, 601 *A.*2d 693 (itemized telephone toll-billing records of county freeholders); *Shuttleworth, supra,* 258 *N.J.Super.* at 583, 610 *A.*2d 903 (police investigative files and autopsy report); *Philadelphia Newspapers, Inc. v. State, Dep't of Law & Pub. Safety,* 232 *N.J.Super.* 458, 464–66, 557 *A.*2d 688 (App.Div.1989) (flight logs to State-owned helicopters); *Red Bank Register, supra,* 206 *N.J.Super.* at 7, 501 *A.*2d 985 (school curriculum-mapping reports).

■ In determining if a requested document is a "public record," we consider whether it is a " 'written memorial made by a public officer authorized to perform that function.' " *Nero, supra,* 76 *N.J.* at 222, 386 *A.*2d 846 (quoting *Josefowicz, supra,* 32 *N.J.Super.* at 591, 108 *A.*2d 865 (quoting 76 *C.J.S. Records* § 1)). We have no doubt that the requested documents constitute public records as that term is understood at common law.

 Consistent with the trial court's and the Appellate Division's determinations, we conclude that the requested documents are public records, subject to the common-law right of access. However, we are concerned that the trial court and the Appellate Division might have concluded prematurely that the State's interest in confidentiality outweighed plaintiff's interest in access. We find that the record insufficiently defines the public purpose to be advanced by access to the documents, and although plaintiff might be partially responsible for that deficiency, we are certain that an adequate and informed balancing of interests cannot be performed if the public interest in access is not sufficiently disclosed. Moreover, in determining whether partial access, redacted access, or no access is the proper response, a careful evaluation of the interest in disclosure is indispensable to an appropriate resolution of the trial court's balancing function.

 Accordingly, we remand this case to the trial court to balance defendants' interest in confidentiality against the public interest in disclosure of the requested documents. *See South Jersey Publishing, supra,* 124 *N.J.* at 498, 591 *A.*2d 921. In balancing those interests, the court will recognize that a basic element of the public interest in disclosure is the desirability of informing the public about the manner in which law-enforcement officers perform their responsibility in licensing applicants from among the general public to purchase handguns and rifles. Unquestionably, the proper issuance of firearm licenses only to persons qualified to receive them is a matter of fundamental public concern.

The court will balance the public interest, augmented by whatever additional disclosures and allegations plaintiff might proffer, against any competing interests that defendants have advanced. Those interests include maintaining the confidentiality of personal information in an applicant's investigative file, preventing increased black-market sales of unregistered firearms, ensuring the candor of an applicant and his or her references, denying the criminal elements in our society the opportunity of obtaining

"shopping lists" of names and addresses of persons who own firearms, and decreasing the chilling effect of public disclosure on qualified persons who wish to purchase a firearm.

In performing its balancing function under the common-law right of access, the trial court will also consider *N.J.A.C.* 13:54–1.15 and its Social Impact statement, 27 *N.J.R.* 305 (Jan. 17, 1995). Although that regulation is not dispositive of the issue before us, it offers a significant insight into the Attorney General's view that the relevant documents remain confidential. In our view, the Attorney General's regulatory expression of the importance of confidentiality weighs very heavily, but not conclusively, in the balancing process. *See Shuttleworth, supra,* 258 *N.J.Super.* at 594, 610 *A.*2d 903 (stating that Executive Branch "regulation by itself cannot control the common-law disposition," although "a legitimate need for confidentiality and the policy behind [such a] regulation can be considered as a factor in determining the common-law balance"); *see also Higg–A–Rella, Inc. v. County of Essex,* 141 *N.J.* 35, 49, 660 *A.*2d 1163 (1995) (stating that although not determinative under common-law balancing test, "amendment [to the Right–to–Know Law that restricted public access regarding public records to receipt of only printed copies of records] is a factor to be considered"); *cf. South Jersey Publishing, supra,* 124 *N.J.* at 489, 591 *A.*2d 921 (noting that Right–to–Know Law "did not curtail or affect the common-law right to inspect and examine public records"); *Irval, supra,* 61 *N.J.* at 373, 294 *A.*2d 425 (observing that Right–to–Know Law "was not intended to diminish or in any way curtail the common law right of examination. That right remains unaffected by this legislation."). Considering the regulation as a significant factor to be weighed in the balancing process is consistent with our view that the common law offers a window of discretion for courts to balance the many interests in resolving the question of access.

In balancing, the court must "concretely focus[ ] upon the relative interests of the parties in relation to [the] specific materials." *McClain, supra,* 99 *N.J.* at 361, 492 *A.*2d 991. In so doing,

the court should consider the *Loigman* factors. 102 *N.J.* at 113, 505 *A*.2d 958. Moreover, the court must evaluate carefully the public interest that plaintiff seeks to vindicate in requesting those documents and the relevance "of the information sought to * * * plaintiff's vindication of [that] public interest." *Ibid.* The information that the court releases will depend on plaintiff's actual interest in obtaining access to that information. *See Higg–A–Rella, supra,* 141 *N.J.* at 47, 660 *A*.2d 1163 ("The degree of interest demonstrated by the person seeking access becomes important only in the context of the [common-law] balancing test."). The court should attempt to provide only information that is responsive to the public interest at stake, which may include documents with parts redacted.

For example, if plaintiff's interest is in ascertaining whether an official issued handgun-purchase permits without legal authority to do so, the court will provide responsive information by granting access to permits with all parts redacted except for the official's signature, title, and address, the permit number, and the date issued. If, however, plaintiff's interest is in determining whether an official issued firearms-purchaser identification cards to convicted felons, the court must tailor the information revealed to be responsive to the public interest involved in that request. In that event, disclosing responsive portions of the relevant documents might be appropriate provided the remaining parts of those documents are redacted to accommodate the State's interests in confidentiality and privacy. In the event that the public's interest is in knowing an applicant's identity, the court must determine if the interest in disclosure outweighs the State's interest in confidentiality. *See Higg–A–Rella, supra,* 141 *N.J.* at 47–48, 660 *A*.2d 1163 ("[T]o gain access, th[e] person's interest in disclosure of the document must outweigh the State's interest in non-disclosure."). If necessary, the court may compel production of sought-after documents and conduct an *in camera* review thereof. *See South Jersey Publishing, supra,* 124 *N.J.* at 488, 591 *A*.2d 921. In sum, the court must explore what information, if any, can be disclosed to plaintiff to vindicate the public interest while being cognizant of

the State's interests in confidentiality and privacy. We imply no view whatsoever on the disposition that the trial court should reach on remand.

In respect of access to the Consent for Mental Health Records Search form, we treat that issue separately and direct the trial court to examine that question under *N.J.S.A.* 30:4–24.3. That statute provides:

> All certificates, applications, records, and reports made pursuant to the provisions of * * * Title [30] and directly or indirectly identifying any individual presently or formerly receiving services in a noncorrectional institution under * * * Title [30], or for whom services in a noncorrectional institution shall be sought under this act shall be kept confidential and shall not be disclosed by any person, except insofar as:
>
> (1) the individual identified or his legal guardian, if any, or, if he is a minor, his parent or legal guardian, shall consent; or
>
> (2) disclosure may be necessary to carry out any of the provisions of this act or of [*N.J.S.A.* 2A:82–41]; or
>
> (3) a court may direct, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest.

We note that the second exception is not applicable because *N.J.S.A.* 2A:82–41 pertains to the right to examine the hospital records of a person asserting a personal-injury claim. We also find that the first exception is inapplicable because applicants have not consented to disclosure of their mental-health records except to the chief of police or the Superintendent. Under *N.J.S.A.* 2C:58–3e and solely "[f]or the purpose of complying with th[at] subsection, [an] applicant [must] waive any statutory or other right of confidentiality relating to institutional confinement." *Ibid.* Consistent with the limitations of that subsection is the Consent for Mental Health Records Search form, which states:

> I, ____, am aware of my rights under N.J.S.A. 30:4–24.3, and consent to disclose ... my mental health records to the Chief of Police, Superintendent of State Police or their designees for the purpose of verifying my firearms permit application and my fitness to own a firearm under N.J.S.A. 2C:58–3.

Accordingly, an applicant waives his or her right to confidentiality regarding only the chief of police and the Superintendent and only

to the extent necessary to determine the applicant's fitness to own a firearm.

However, our observations still leave open the possibility that plaintiff may obtain the consent form or certain information contained therein either if it does not "directly or indirectly identify [ ]" the applicant, *see N.J.S.A.* 30:4–24.3, or if the court finds that disclosure "is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest." *See N.J.S.A.* 30:4–24.3(3).

Finally, although we acknowledge plaintiff's constitutional claim of a right of access, in view of our disposition, we do not reach that claim.

### IV

The judgment of the Appellate Division is affirmed as modified, and the case is remanded to the Law Division for proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, STEIN, GARIBALDI and COLEMAN—7.