767 A.2d 533 (2000)
337 N.J. Super. 480
The PRESS OF ATLANTIC CITY, a newspaper owned and operated by South Jersey Publishing Co., Inc., and Michael Diamond, Plaintiffs,
v.
OCEAN COUNTY JOINT INSURANCE FUND, the Municipal Excess Liability Joint Insurance Fund, Ocean Township and Lakewood Township, and Alan T. Smith and David N. Simpson, as indispensable parties, Defendants.
Superior Court of New Jersey, Law Division, Ocean County.
Decided October 4, 2000.
*535 Nelson C. Johnson, Hammonton, for plaintiffs.
Steven A. Zabarsky for Ocean County Municipal Joint Insurance Fund (Citta, Holzapfel, Zabarsky, Leahey & Simon, attorneys).[1]
*534 SERPENTELLI, AJSC.
This case focuses on the tension which exists between the right to obtain governmental documents and the attorney-client privilege as it relates to communications between an attorney and a client which is a public entity.
The plaintiffs, the Press of Atlantic City and Michael Diamond (hereinafter collectively referred to as the "plaintiffs" or "Press") brought an action against the defendant Ocean County Joint Insurance Fund and the Municipal Excess Liability Fund (hereinafter collectively referred to as the "Fund") as well as Ocean Township and Lakewood Township. The Press contends that the Fund refused to grant access to records pertaining to the settlement of suits brought by Alan T. Smith (hereinafter "Smith") against the Township of Ocean and by David M. Simpson (hereinafter "Simpson") against the Township of Lakewood.
The Fund concedes that it is a public body as defined by Section 8A of the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21. In addition, the Fund acknowledges that it is subject to the requirements of the Right to Know Law, N.J.S.A. 47:1A-1 to -4.
Initially, the Fund agreed to release several documents concerning the Smith and Simpson litigation. However, the Fund refused to reveal the confidential settlement agreements until such time as Smith and Simpson were notified and given an opportunity to object to the disclosure. After the commencement of this action, the court directed that Smith and Simpson be joined as defendants. Neither has objected to the disclosure of any material.
Either prior to this suit or during subsequent court proceedings, the Fund voluntarily divulged all material concerning the settlements with the exception of a document entitled "Claims Analysis Report" (hereinafter "Report" or "Reports"). As to the Report, the Fund contends that the plaintiffs are not entitled as a matter of law to receive this record because it is not a document "required by law to be made, maintained or kept on file", pursuant to the Right to Know Law, N.J.S.A. 47:1A-2. The Fund also asserts that if the Report is considered a public record pursuant to the common law, the confidentiality interest in the document, namely the attorney-client communications, outweighs the public interest in the disclosure. The Fund is willing *536 to have a redacted version of the form released to the plaintiffs.
The plaintiffs contend that the Report is required to be disclosed pursuant to the statutory Right to Know Law. Alternatively, the plaintiffs assert that, assuming the court finds the Report is only obtainable under the common law right to know, and even if the Report contains privileged attorney-client communications, that privilege evaporates once the matter is concluded. The Press claims that the public has an absolute right to be fully informed of the basis for governmental decision making, including the advice given to the public entity by its lawyer, in order to enable the public to evaluate the reasonableness of the governmental body's action.
Thus, the case requires the court to first determine whether the document must be produced either under the statutory or common law right to know law, and second, if it is a common law document, whether the attorney-client privilege should give way to the public interest in full exposure.
As this suit progressed, both the court and the parties struggled to understand the exact procedure which the Fund utilizes to process and resolve litigation. Furthermore, it became necessary to clarify the exact nature of each document involved, including its title. That is particularly important because N.J.A.C. 11:15-2.22 details the disbursement and payment procedures for the Fund and, to the extent that this Administrative Code regulation can be seen as requiring specific documents to be made and maintained, those records would be subject to complete disclosure under the Right to Know Law. N.J.S.A. 47:1A-2. The issue is whether the Report is one of those documents.
In summary, N.J.A.C. 11:15-2.22 provides that all disbursements, payments of claims or other expenditures of the Fund, must be approved by a majority of the Fund Commissioners or their designee. Upon approval, a certification specifying the amount and particulars of the approved claims must be executed. Furthermore, the certifying and approving officer must prepare a report of all claims approved since the last report, detailing the nature and amount of the claim, the payee, the reasons supporting payments and any other pertinent information. That document is to be submitted to the Fund Commissioners at their next scheduled meeting. The Fund Commissioners must then review and approve the action of the certifying officer. The Code also requires that all requests for payments are to be accompanied by a detailed bill of items or demand specifying how the bill or demand is made up, with the certification of the party seeking payment, that it is correct. The Fund has produced a document entitled "Payment Register" which it contends satisfies the provisions of these Administrative Code regulations.
The Fund insists that the Report is an altogether different document not mandated by the Code. In an effort to resolve that dispute and to avoid unwarranted disclosure of confidential information if a privacy right exists, the court required copies of the Reports utilized in the Smith and Simpson cases to be produced in camera. The forms submitted to the court were prepared by Scibal Associates, a claims adjuster retained by the Fund. They include a myriad of information, some of which duplicates data contained in the Payment Register. However, unlike the Payment Register, they also embody a technical analysis of such matters as the accident description, liability issues, discovery, present and future litigation strategy, recommended reserves for settlement and a settlement authorization. That information is obviously developed through communications with the Fund counsel.
The court's review reveals that there are portions of the technical analysis which are simply factual recitations having no attorney-client component. On the other hand, parts of the text clearly involve matters which would normally be perceived *537 as a privileged communication between an attorney and client, such as litigation strategy, evaluation of the Fund's liability, potential monetary exposure and a recommended range of settlement. Finally, the Reports contain signature lines for approval by the Claims Committee, the Fund client and the Executive Committee of the Fund which, when executed, authorize settlement within a specified range.
The Report is not a form authorizing a final settlement. Instead, it is as the title suggests, an analysis of the present status of a case, future strategy and an authorization to resolve it within specified limits. When seen in that light, it is evident that the form is not the document contemplated by N.J.A.C. 11:15-2.22. The Payment Register, which was furnished to the plaintiffs, much more closelyif not entirelycomports with the Code requirement. Therefore, having concluded that the Report is not one that is made, maintained or required to be kept on file under the Right to Know Law, the court must determine whether it is obtainable under the common law and, if so, whether the attorney-client privilege in any way precludes its disclosure.
Under the common law, a threshold condition for access to public records is a requirement that the citizen establish an interest in the subject matter of the material which is sought. South Jersey Publishing Co., Inc. v. N.J. Expressway Authority, 124 N.J. 478, 487, 591 A.2d 921 (1991). The interest does not have to be personal, but rather may be "one citizen or taxpayer out of many, concerned with a public problem or issue...." Irval Realty, Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372, 294 A.2d 425 (1972). Our courts have recognized that a newspaper's interest in investigating the workings of public entities is sufficient reason to accord the press standing under the common law. Red Bank Register, Inc. v. Bd. of Educ. of Long Branch, 206 N.J.Super. 1, 9, 501 A.2d 985 (App.Div.1985). In actuality, the Fund does not appear to resist the plaintiffs' standing or their right to receive appropriate documents.
Instead, the dispute lies in the breadth of the disclosure. The common law defines a public record more broadly than the Right to Know Law. South Jersey Publishing, supra, 124 N.J. at 489, 591 A.2d 921. Under the common law, a "public record" is:
[O]ne required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are * * * that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it.
[Nero v. Hyland, 76 N.J. 213, 222, 386 A.2d 846 (1978) (quoting Josefowicz v. Porter, 32 N.J.Super. 585, 591, 108 A.2d 865 (App.Div.1954)) ]
More succinctly put, a common law public record is a document which is made by a public official in the exercise of a public function. North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders, 127 N.J. 9, 13, 601 A.2d 693 (1992).
With the above definitions in mind, there is little doubt that the Report is a common law right to know document. "However, the common-law right to access is not absolute." Southern N.J. Newspapers, Inc. v. Township of Mt. Laurel, 141 N.J. 56, 72, 660 A.2d 1173 (1995). Instead, once it has been determined that the plaintiffs have standing and that the documents sought are public records, the court is called upon to weigh the plaintiffs' interest in exposure against the claimed confidentiality interest in maintaining privacy. Loigman v. Kimmelman, 102 N.J. 98, 112, 505 A.2d 958 (1986).
*538 Generally speaking, when confidentiality is at issue, our courts have held that the right to disclosure depends upon how compelling the reasons are for insuring confidentiality. When there is a strong need to maintain a high degree of confidentiality in governmental records, even if a public interest is asserted, more than the citizens status and good faith are necessary to require production of the records. Id. at 105-06, 505 A.2d 958. On the other hand, as the justification for maintaining confidentiality becomes less persuasive, the burden on the party seeking release is diminished. Techniscan Corp. v. Passaic Valley Water Comm'n, 113 N.J. 233, 236, 549 A.2d 1249 (1988). But for the inclusion of material that is clearly within the attorney-client privilege, there is no question that the Report would be disclosed under the common law right to know. However, revealing the entire Report implicates significant public policy issues.
The importance of protecting confidentiality within the attorney-client relationship has a long history of recognition by the courts. See, e.g., Matter of Grand Jury Subpoenas, 241 N.J.Super. 18, 574 A.2d 449 (App.Div.1989). Our Supreme Court has noted that "[i]n order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure... must be removed...." In re Selser, 15 N.J. 393, 404, 105 A.2d 395 (1954) (quoting 8 Wigmore, Evidence 550, (3d ed.1940)). The underlying rationale for the privilege has been characterized as the need for the attorney "to know all that relates to the client's reasons for seeking representation...." Macey v. Rollins Environmental Services, 179 N.J.Super. 535, 539, 432 A.2d 960 (App.Div.1981) (quoting Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). The United States Supreme Court has recognized that the proper preparation of a case requires that a lawyer assemble information, sift relevant from irrelevant facts, prepare legal theories and plan strategy without undue and needless interference. United States v. Nobles, 422 U.S. 225, 237, 95 S.Ct. 2160, 2169, 45 L.Ed.2d 141, 153 (1975). The privilege was codified by our Legislature in N.J.S.A. 2A:84A-20, and is incorporated within R. 504 of the New Jersey Rules of Evidence.
Evid.R. 504(1) provides that communications between a lawyer and client "in the course of that relationship and in professional confidence, are privileged...." The privilege has been extended to cover agents and representatives of a lawyer, including communications between an insured and an adjuster, when such communications are made for the purpose of legal representation and confidentiality is reasonably expected. State v. Pavin, 202 N.J.Super. 255, 260-62, 494 A.2d 834 (App. Div.1985).
The protections afforded by the attorney-client relationship are not limited to private representation. The privilege has been held "fully applicable to communications between a public body and an attorney retained to represent it." Matter of Grand Jury Subpoenas, supra, 241 N.J.Super. at 28, 574 A.2d 449 (citing In re State Comm'n of Investigation, 226 N.J.Super. 461, 544 A.2d 893 (App.Div. 1988)). The court in Matter of Grand Jury Subpoenas noted that "public scrutiny of matters traditionally falling within the purview of attorney-client privilege is often inimical to the public interest, notwithstanding that a governmental entity is a client." 241 N.J.Super. at 29, 574 A.2d 449.
Although New Jersey has a notably strong public policy in favor of open government as evidenced by the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21, and the Right to Know Law, N.J.S.A. 47:1A-1 to -4, the public's right of inspection is not unlimited. Accident Index Bureau, Inc. v. Hughes, 83 N.J.Super. 293, 298, 199 A.2d 656 (App.Div.1964) aff'd, 46 N.J. 160, 215 A.2d 529 (1965). The Legislature, when enacting the Open *539 Public Meetings Act, dealt directly with the attorney-client privilege in N.J.S.A. 10:4-12(b), by providing that:
A public body may exclude the public only from that portion of a meeting at which the public body discusses:
(7)... Any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer.
Thus, the Legislature recognized that matters falling within the privilege should be free from public review notwithstanding that a governmental entity is a client and despite the strong public policy favoring maximum access to governmental deliberations. Pillsbury v. Bd. of Chosen Freeholders of Monmouth County, 133 N.J.Super. 526, 535, 337 A.2d 632 (Law Div.1975), aff'd. 140 N.J.Super. 410, 356 A.2d 424 (App.Div.1976). However, the Right to Know Law does not delineate specific exclusions from its coverage. Rather, it leaves that determination either to executive or legislative action, federal law, regulation or order, our Court Rules or for the courts to develop on a case-by-case basis. N.J.S.A. 47:1A-2; McClain v. College Hosp., 99 N.J. 346, 355-56, 492 A.2d 991 (1985).
As noted, the statutory Right to Know Law presents citizens with "an almost absolute right to inspect, copy, or purchase" even if the documents contain confidential or privileged information. Keddie v. Rutgers, State University, 148 N.J. 36, 44, 689 A.2d 702 (1997), (citing Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 43, 660 A.2d 1163 (1995)). However, the common law right of access to public records is not boundless. South Jersey Pub., supra, 124 N.J. at 488, 591 A.2d 921. The court, "after determining that a plaintiff has standing and the documents sought are public records...must balance the plaintiff's interest in the information against the public interest in confidentiality of the documents...." Id. As part of this balancing, the court may "compel production of the sought-after records and conduct an in camera review thereof." Id. The court may "decide... to release the records in a redacted form, editing out any privileged or confidential subject matter...." Id. at 488-89, 591 A.2d 921.
The court should also consider whether the requested documents pertain to pending or closed cases as the need for confidentiality is greater in pending matters. Keddie, supra, 148 N.J. at 54, 689 A.2d 702. Nevertheless, "[e]ven in closed cases... attorney work-product and documents containing legal strategies may be entitled to protection from disclosure." Id. The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that the confidentiality of communications between client and attorney constitutes an indispensable ingredient of our legal system." Matter of Grand Jury Subpoenas, supra, 241 N.J.Super. at 27-28, 574 A. 2d 449.
A balancing of the competing interests in this case leads the court to conclude that release of the attorney-client communications contained within the Report would be inappropriate. The disclosure which has already been made provides the Press with a great deal of information from which a judgment can be made as to the reasonableness of the Fund's decision in settling the two cases in controversy.
Moreover, there is a manifest potential for chilling the free flow of communications between attorney and client, if strategy, advice and evaluation are to be disclosed even upon the conclusion of cases. Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The possibility that settlements will be inhibited is clear. Feared disclosure of such privileged communications, even after the case is completed, could severely restrict a public entity's willingness to resolve litigation by settlement. That prospect contravenes the strong judicial policy favoring consensual resolution. *540 Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990), (quoting Jannarone v. W.T.Co., 65 N.J.Super. 472, 476, 168 A.2d 72 (App.Div.1961) certif. denied, 35 N.J. 61, 171 A.2d 147 (1961)). The public interest in rapid and cost efficient disposition of claims against governmental bodies, as well as the fundamental fairness of adjusting claimants' rights fairly and promptly, argues for the protection of that portion of the process that is most critical in accomplishing those goals.
However, as noted earlier, the Fund has no objection to release of redacted Reports. Although the documents contain information already disclosed in other records, there are portions of them which constitute new information clearly outside of the attorney-client privilege. In the spirit of maximum enlightenment encouraged by our law, that information should be released. The court will redact the Reports and provide the Fund counsel an opportunity to review them in the event there is an objection to releasing any of the data which the court deems appropriate to disclose.
NOTES
[1] The Municipal Excess Liability Fund did not appear, relying on the Ocean County Joint Insurance Fund's position. Ocean Township, Lakewood Township, Alan T. Smith and David N. Simpson did not participate.