880 A.2d 458 (2005)
379 N.J. Super. 611
William H. MICHELSON, Plaintiff-Appellant,
v.
Laddie WYATT and The City of Plainfield, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2004.
Decided August 11, 2005.
*460 William H. Michelson, appellant, argued the cause pro se.
Philip G. George, argued the cause for respondents (Eric M. Bernstein & Associates, Warren, attorneys; Mr. Bernstein, of counsel; Mr. George, on the brief).
Before Judges CUFF, WEISSBARD and HOENS.
The opinion of the court was delivered by
CUFF, J.A.D.
Plaintiff is a citizen who requested information concerning the health insurance benefits enjoyed by employees of the city in which he resides. Plaintiff appeals from an order denying access to the requested health information records. His request raises questions about whether the information is required to be disclosed or is protected information under the Open Public Records Act (OPRA) or the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA). Except for a minor aspect of the order, we affirm.
On January 31, 2003, plaintiff William H. Michelson filed a Request for Access to Government Records (Request) with defendant Laddie Wyatt, the City Clerk of defendant City of Plainfield (the City). The Request contained a cover letter to Wyatt in which plaintiff outlined his document needs. Second, plaintiff completed the application form created by the City Clerk for document requests. He requested "documents relating to the City's employee group medical insurance program." Third, plaintiff appended a rider to this application detailing nine document requests. It states:
I request a copy of any documents responsive to the following items. If some of them are available by way of a pre-printed brochure or computer print-out, that is acceptable.
1. Description of any and all medical insurance plans which have been available to employees or officials of the City of Plainfield at any time during calendar years 2001, 2002 and 2003. I am particularly interested in the instructions which would advise employees and officials about coverage available for their dependents or family members, and what cost there would be to them. If certain plans were available only to certain categories of employees or officials, i.e., based on what union (if any) they belong to, please identify them accordingly. If employees of independent *461 agencies such as the Plainfield Municipal Utilities Authority and Plainfield Housing Authority have been entitled to coverage under any medical plan administered or paid for by the City of Plainfield, then similar information pertaining to them is included in this request.
2. That portion of all union contracts, employment or other individual contracts, or memoranda of agreement, which describe the entitlement to medical insurance, including coverage for dependents and others, for all City employees or officials, during calendar years 2001, 2002 and 2003. With regard to union contracts, I only need those pages which are pertinent to this request.
3. Any City Council resolution, or executive order of the Mayor, which pertains to the medical insurance available to elected or appointed officials of the City of Plainfield, for any time during calendar years 2001, 2002 and 2003. See N.J.S.A. 40A:10-16(b), copy attached.
4. Any and all bills or invoices received by the City of Plainfield from any insurance company or HMO which provided medical insurance to City employees or officials at any time during 2001, 2002 or 2003, showing what the cost of such coverage was to the City. Please include all breakdowns provided by the insurance companies, which would show what the cost was for each employee or official, or for each dependent or other person included under their coverage. If you have any summaries of coverage cost as defined in N.J.S.A. 40A:10-24, copy attached, from any insurance company, please furnish that as well.
5. A list of each and every City employee or official, whether employed directly by the City or by any independent agency or authority, who had coverage under any of the City's group medical insurance plans at any time during the years 2001, 2002 and 2003. For each such person, please show his/her home address, job title, and inception or termination date of employment (if applicable). Also, for each such person, please provide a complete list of each and every dependent or other person who enjoyed coverage under the City medical insurance plans during any of the same time periods. For each such dependent, please give his/her name, home address, age, and any other available information which would describe why they were entitled to coverage.
6. For every alleged dependent or other non-employee included under the City's medical group insurance plans, for the same periods as above, please provide a statement of all costs incurred by the City as a result of each such coverage.
7. A list of each and every employee or official who, under N.J.S.A. 40A:10-17.1 or -18 (copy attached), waived coverage, either for himself/herself or for any dependent, at any time during the years 200[1], 2002 and 2003.
8. A list of each and every employee or official who, at any time during the years 2001, 2002 and 2003, has had any payroll deductions for medical insurance premiums, w[he]ther for themselves, their dependents or others, under any of the City medical insurance group plans. For each such employee, please show how much was deducted from each check, over what period of time, and what the reason for deduction was.
9. A list of each and every retired employee or official who, at any time in 2001, 2002 or 2003, has remained on any of the City medical insurance plans under N.J.S.A. 40A:10-23 (copy attached), with an explanation of their entitlement *462 to have any or all of the costs of such coverage paid by the City.
On March 18, 2003, Wyatt responded to plaintiff's Request. Fourteen documents, including a summary description of the State Health Benefits Plan (the Plan), relevant portions of seven union contracts representing groups of City personnel, such as police and firefighters, copies of State Health Benefit Commission (the Commission) billings for active employees from January 2001 through January 2003, and retired employees from January 2001 through February 2003, copies of invoices for dental and prescription coverages from January 2001 through February 2003, copies of invoices for long- and short-term disability coverage from January 1, 2001 through January 1, 2003, and a copy of the resolution authorizing City participation in the Plan were provided to Michelson. The City Clerk did not provide any individualized information about current employees, retired employees or officials, current officials and their dependents who participate in the medical insurance plans offered by the City. Plaintiff promptly complained that the response satisfied only categories 1-3 and part of category 4 of his request and that a portion of category 4 and all of categories 5 through 9 were not satisfied by the City's response. On March 19, 2003, City Counsel informed plaintiff that the City denied his request for documents under categories 5, 7, and 9 due to privacy concerns and based on exemptions to production.
On May 16, 2003, plaintiff filed a Verified Complaint pursuant to OPRA, N.J.S.A. 47:1A-1 to -13, against Wyatt and the City. On the return date of the Order to Show Cause, the judge denied plaintiff's request for access to the unproduced documents and dismissed plaintiff's complaint. In a written opinion, the judge referred to the public policy of ready access by citizens to government records and detailed the history of the development of a citizen's right to inspect government records. Ultimately, he opined that the unproduced records "are exempt from OPRA and are protected under both federal and state laws." He also concluded that the requested records were not subject to inspection under the common law.
On appeal, plaintiff argues that the names of medical plan enrollees are not protected under OPRA and that federal law does not apply to his document Request. At oral argument, plaintiff conceded that the scope of his Request included the claims experience of individual employees, but stated that he would limit his Request to the names of those who participate in the Plan. He also seeks information regarding extraordinary claims experience by individual employees or dependents. The City responds that the information sought by plaintiff is not subject to disclosure under OPRA, that disclosure is prohibited by HIPAA, and that plaintiff's demands for family-related information would invade the privacy of City employees and retirees.
The City participates in the Plan administered by the Commission. The Plan has been described in another access to public record case as follows:
The Plan is a self-insured program that provides health insurance to workers employed by participating public entities, including local governments and their subdivisions. It is managed by the [State Health Benefits] Commission, which functions within the Division of Pensions of the Department of the Treasury. Private health insurance companies ... administer the Plan under contract with the Commission. Participation in the Plan by local government employers is voluntary. The Plan is said to be "community-rated," which *463 means that the risk is analyzed and the premiums are set based on the overall loss experience of all the participants, instead of calculating different premiums for each employer based on its individual risk. See City of Vineland v. State, 95 N.J.A.R.2d 275, 277 [1995 WL 605313] (1995) (discussing Plan's community-rating system); see generally In re Blue Cross & Blue Shield, 239 N.J.Super. 434, 439, 571 A.2d 985 (App. Div.1990).
[Bd. of Educ. of Newark v. N.J. Dep't of Treasury, 145 N.J. 269, 272, 678 A.2d 660 (1996).]
As a participating employer, the City oversees employee enrollment in the Plan and transmits the required information to the Commission to effectuate that enrollment.
In 2001, the Legislature adopted a comprehensive revision of the law governing public access to government records through the Right to Know Act, N.J.S.A. 47:1A-2 to -4. OPRA, N.J.S.A. 47:1A-1 to -13, declares that it is the public policy of this State for government records to be "readily accessible for inspection, copying, or examination by the citizens of this State," and that the right to access "shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. See also Serrano v. S. Brunswick Tp., 358 N.J.Super. 352, 363, 817 A.2d 1004 (App.Div. 2003). On the other hand, the legislation also declares that "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1.
A government record is defined as
any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, . . . or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof,...."
[N.J.S.A. 47:1A-1.1 (emphasis supplied).]
In other words, if the public employee or public entity has not made, maintained, kept or received a document in the course of his or its official business, a document is not a government record subject to production. See The Daily Journal v. Police Dep't of Vineland, 351 N.J.Super. 110, 120, 797 A.2d 186 (App.Div.) (pursuant to Right to Know Law, a document prepared by a public employee is a public record only if its preparation was required by law or regulation), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002). Moreover, the public agency or entity is not required to produce a document or to compile information contained in other government documents, if the public employee or public agency is not required by law to maintain such information. Bd. of Educ. of Newark, supra, 145 N.J. at 279, 678 A.2d 660 (citing N.J.S.A. 47:1A-2).
Information that is deemed confidential is not considered a government record. N.J.S.A. 47:1A-1.1. One such category is "information which is a communication between a public agency and its insurance carrier, administrative service organization or risk management office." Ibid.
OPRA also specifically addresses personnel and pension records. All information *464 in those records, other than a public employee's name, title, position, salary, payroll record, length of service, date of termination of public employment and the reason for separation, and the amount and type of pension received, is not considered a government record. N.J.S.A. 47:1A-10.
In addition to the documents specifically identified as not subject to production and inspection under OPRA, the statute also provides that it does not abrogate any exemption of a public or government record pursuant to the Right to Know Law, any other statute, resolution of either house of the Legislature, any duly adopted regulation, Executive Order, rule of court or federal law. N.J.S.A. 47:1A-9; see also N.J.S.A. 47:1A-5(a).
We have identified one Executive Order and a Commission regulation that declare confidential much of the information sought by plaintiff. Executive Order 26 (2002) also declares information regarding an individual's health history is not a government record subject to public access. The Order provides:
4. The following records shall not be considered to be government records subject to public access pursuant to N.J.S.A. 47:1A-1 et seq., as amended and supplemented:
* * *
(b) Information concerning individuals as follows:
(1) Information relating to medical, psychiatric or psychological history, diagnosis, treatment or evaluation;
[Executive Order No. 26, par. 4(b)(1) (2002).]
Finally, the Commission treats all personal health information as confidential information in accordance with HIPAA. N.J.A.C. 17:9-1.2(b) provides:
Records considered confidential include all matters related to the coverage of individual participants and their families, mailing addresses of active and retired participants and individual files related to claims.
This brief overview of OPRA illustrates that a determination of whether information sought by a citizen is subject to disclosure requires a multi-layered process. Here, the information sought by plaintiff goes well-beyond the personnel information a citizen is expressly entitled to receive. See N.J.S.A. 47:1A-10. Care must be taken to determine the nature of the information sought by plaintiff and whether any regulations, executive orders or federal law operate to render the information confidential.
At the outset, we emphasize that consideration of a request pursuant to OPRA for information maintained by a public entity does not include the reason for the request. See Irval Realty, Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372-73, 294 A.2d 425 (1972) (discussing the showing required under the Right to Know Law and common law). Plaintiff's reasons are relevant only to his common law request for documents. Ibid.
In this case, plaintiff seeks information that includes the name of every person who receives health benefits through the City, the justification or reason health benefits are provided to each person, the type of coverage each receives (single, member and spouse or domestic partner, parent and child(ren), or family), the names of persons designated by an employee or retiree as a dependent, and the claims history. We conclude that the information sought by plaintiff that has been withheld is not subject to disclosure pursuant to OPRA.
*465 OPRA explicitly states that personnel and pension information other than a person's name, title, position, salary, payroll record, length of service, date of separation, and type and amount of pension is not considered a government record and is, therefore, not subject to disclosure. N.J.S.A. 47:1A-10. In addition, information gathered by a municipal employer for transmission to its insurance carrier is not a government record and, therefore not subject to disclosure. N.J.S.A. 47:1A-1.1. The City participates in the Plan. Any information it receives about an employee's or retiree's health care benefits and claims experience is transmitted to the Commission and is not considered a government record subject to public disclosure.
Recently, this court emphasized that a custodian of public records may not be able to articulate the reason for non-disclosure when the public entity or person who urges confidentiality is not on notice of the request. Gannett New Jersey Partners, LP v. County of Middlesex, 379 N.J.Super. 205, 214-15, 877 A.2d 330 (App.Div.2005). On the other hand, when the requested material appears on its face to encompass legislatively recognized confidentiality concerns, a court should presume that the release of the government record is not in the public interest. Id. at 215, 877 A.2d 330.
In Gannett, the government records sought were grand jury subpoenas served by a federal grand jury on the Office of the Governor. Id. at 213, 877 A.2d 330. OPRA and the federal Freedom of Information Act exempted from disclosure information concerning a law enforcement proceeding. Although this case does not involve a criminal investigation, the Gannett court emphasizes that the custodian and the court must delve into state and federal statutes and regulations to determine if the information is considered confidential and whether access to the information is inimical to the public interest or the individual interests of the persons about whom information is sought, particularly when those entities or individuals have not received notice of the request and are unable to express their privacy concerns. Id. at 213-14, 877 A.2d 330.
Here, in addition to the express provisions of OPRA, Wyatt was obliged to consider the Executive Order and the Commission regulation. We must also consider the applicability of federal law, specifically the HIPAA Privacy Rule provisions, 42 U.S.C.A. 1320d to d8, 45 C.F.R. §§ 160.103 and 164.502, enacted in 1996. HIPAA was enacted on August 21, 1996. Pub.L. 104-191, 110 Stat. 1936 (1996). The preamble of the law states that it intends
to amend the Internal Revenue Code of 1986 to improve portability and continuity of health insurance coverage in the group and individual markets, to combat waste, fraud, and abuse in health insurance and health care delivery, to promote the use of medical savings accounts, to improve access to long-term care services and coverage, to simplify the administration of health insurance, and for other purposes.
[Ibid.]
An initial reading of this preamble suggests that HIPAA was not intended to address the concerns arising from the document requests of plaintiff and may have been limited only to administrative simplification measures in connection with the Medicare program. This restrictive interpretation, however, has been soundly rejected. S. Car. Med. Ass'n v. Thompson, 327 F.3d 346, 353-54 (4th Cir.), cert. denied, 540 U.S. 981, 124 S.Ct. 464, 157 L.Ed.2d 371 (2003). Accord Smith v. Am. Home Prods. Corp. Wyeth-Ayerst Pharm., *466 372 N.J.Super. 105, 110, 855 A.2d 608 (Law Div.2003).
Indeed, administrative simplification of the Medicare program is only one of the purposes of HIPAA. Another important purpose is the protection of the privacy of health information. S. Car. Med. Ass'n, supra, 327 F.3d at 348. To this end, Congress mandated the Secretary of Health and Human Services to develop standards to enable electronic exchange of medical information and to insure the privacy of medical information. 42 U.S.C.A. § 1320d-2(a). The Secretary eventually promulgated regulations that became effective on April 14, 2003. These regulations, collectively known as the Privacy Rule, set forth standards and procedures for the collection, maintenance and disclosure of certain health care information. 42 U.S.C.A. § 1320d-1; 45 C.F.R. § 160.102. The Privacy Rule prohibits covered entities from using or disclosing personal health information except as permitted by regulation. 45 C.F.R. § 164.502(a); Smith, supra, 372 N.J.Super. at 111, 855 A.2d 608.
The HIPAA privacy restrictions govern only covered entities and their business associates. 45 C.F.R. § 160.102. There are three covered entities: 1) a health plan; 2) a health care clearinghouse; and 3) a health care provider that transmits any health information in electronic form in connection with a covered transaction. 42 U.S.C.A. § 1320d-1(a); 45 C.F.R. § 160.103. An employer that is not a self-insurer is not a covered entity. See Monte Walz and Michele Cussman, Disclosure of Protected Health Information in South Dakota After HIPAA, 49 S.D. L.Rev. 503, 519-20 (2003-2004). The authors of this article suggest that an employer that retains some administrative functions concerning the administration of an employee health plan may fall within the HIPAA Privacy Rule. Id. at 520. The Privacy Rule will also apply to an employer that receives private health information from a covered entity.
Given the relationship between the City and the Commission, the City may be subject to the HIPAA Privacy Rule, but we are unable to determine the applicability of the rule in light of the limited record. We need not definitively resolve this issue because we conclude that the Commission is a covered entity and N.J.A.C. 17:9-1.2(b) is consistent with the HIPAA Privacy Rule. Therefore, the information sought by plaintiff and withheld by the City is not subject to access and disclosure pursuant to OPRA. The Legislature has expressly barred access to the detailed information sought by plaintiff. See N.J.S.A. 47:1A-1.1, and -10. In addition, the Governor has promulgated an executive order that declares that the information sought by plaintiff is confidential. Finally, the Commission has adopted a regulation that also bars access to this information.
Having decided that plaintiff is not entitled to the withheld documents pursuant to OPRA, we consider whether he is entitled to any of the information under the common law right to inspect public records.[1] The common law right to inspect public records extends to a document made by a public employee in the exercise of the public business. Bd. of Educ. of Newark, supra, 145 N.J. at 279, 678 A.2d 660. This right has not been limited by OPRA. N.J.S.A. 47:1A-8. It is, however, subject to three conditions. The citizen who requests the public records must establish an interest in the subject *467 matter. S. N.J. Newspapers, Inc. v. Tp. of Mt. Laurel, 141 N.J. 56, 71, 660 A.2d 1173 (1995); Irval Realty, supra, 61 N.J. at 375, 294 A.2d 425. The interest does not have to be purely personal, but rather may be `one citizen or taxpayer out of many, concerned with a public problem or issue.' S. N.J. Newspapers, supra, 141 N.J. at 71, 660 A.2d 1173 (quoting Irval Realty, supra, 61 N.J. at 372, 294 A.2d 425). A citizen's common law right of access is not absolute. After a determination that the documents sought are public records, the court must balance the citizen's interests in gaining access to public records against the State's interest in confidentiality. Id. at 72-73, 660 A.2d 1173.
Here, plaintiff asserts that he desires access to the documents to identify waste and fraud. He contends that City officials, employees and retirees may have enrolled persons who do not qualify for coverage, such as common law spouses and extended family members. Plaintiff also believes he is entitled to know if individual employees have presented an extraordinary number of claims or if one or more employees have extraordinary claims experience. The City counters that such information is an unwarranted invasion of individual privacy.
We consider plaintiff's identified interest as sufficient to support his common law right; however, we also conclude that his interest is outweighed by the privacy interests of City officials, employees and retirees. The opinion in Board of Education of Newark is instructive. In that case, the Newark Board of Education sought information on medical claims paid by the Plan on behalf of Board of Education employees. Bd. of Educ. of Newark, supra, 145 N.J. at 271-72, 678 A.2d 660. In 1990-1991, the Board paid $25,000,000 in premiums for health insurance coverage for its employees. Id. at 273, 678 A.2d 660. At the time the matter was decided by the Supreme Court, the Board paid in excess of $40,000,000 for premiums. Ibid. The Board sought the information to determine whether participation in the Plan was an effective use of its funds. Ibid.
Although the Court held that the Board was not entitled to the information under the Right to Know Law, id. at 279, 678 A.2d 660, it did allow access to the Board's claims experience in accordance with the common law right. The Court stated:
[T]he records of claims paid are made by public officials in the exercise of their duties in administering the Plan and thus constitute common-law public records. That the Board has an interest in the information it seeks cannot reasonably be disputed. The Board's responsibility for the education of the school children of Newark and the expenditure of a substantial portion of the public funds available to it for health insurance for Board employees elevates the Board's interest in its claims history to one of public importance.
The Commission has alleged no interest in preventing disclosure that would outweigh the Board's need to obtain the information.... No confidential information need be released.
Thus, the common-law balancing of the interests at stake weighs overwhelmingly in favor of disclosure.
[Id. at 280, 678 A.2d 660.]
We do not discern plaintiff's interest in the claims experience of City officials, employees and retirees as analogous to the Newark Board of Education. While plaintiff's interest in identifying and eliminating fraud is noble, he does not share the fiduciary duty of the Board of Education to make the most effective use of limited public funds. Plaintiff is also unable to personally address any misuse of the benefit scheme, if he identifies an ineligible participant. We also discern no way to allow disclosure of claims experience while protecting the confidentiality of participants' *468 health information. Moreover, the claims experience information is unlikely to reveal the cost information sought by plaintiff due to the community-rating formula used to establish premiums.
On the other hand, there is a limited amount of information contained in plaintiff's Request that can be disclosed without revealing the names of dependents who participate in the health insurance plan or any information about their health history. As explained at oral argument, plaintiff's Request encompasses a request for whether an employee, official or retiree has elected to include others in the offered coverage. The Plan allows an employee to elect among four coverage scopes: single, member and spouse or domestic partner, parent and child(ren), or family. Disclosure of this information is no more invasive than the personnel information that is expressly allowed by OPRA. N.J.S.A. 47:1A-10. Disclosure of this information also does not require disclosure of the names of spouses or domestic partners or children or any personal health information. On the other hand, disclosure of the type of coverage elected by an eligible employee, official or retiree assists vindication of the citizen's interest in the detection and elimination of waste or fraud in public employee benefit plans.
Accordingly, we hold that plaintiff has a common law right to access public records that reveal the type of coverage elected by eligible employees, officials, and retirees. Plaintiff is not entitled to addresses, names of spouses, domestic partners and children, any personal health information and any other confidential information. Therefore, the June 20, 2003 order is largely affirmed except as modified in this opinion.
Affirmed as modified.
NOTES
[1] Plaintiff equivocates in his brief whether he is asserting a common law right of access. In the interest of a complete resolution of the issues presented in this appeal, we elect to address the issue.